UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRYCE JAMES DIXON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 11-cv-5005-BHS-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noted for: December 23, 2011

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 12, 13, 14).

Based on the relevant record, the undersigned concludes that the ALJ failed to evaluate properly the medical evidence provided by Dr. Calkins. For this reason, this

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

BACKGROUND

Plaintiff, BRYCE JAMES DIXON, was born in 1988 and was eighteen years old on his alleged date of disability onset in August, 2005 (Tr. 13, 74, 511). Plaintiff's medical record indicates that he was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") at the age of five and with dyslexia in fourth or fifth grade (Tr. 512). It is noted in his medical history that he may have suffered a concussion at age five (Tr. 512, 513-14).

Plaintiff's parents indicated that plaintiff was "born blue," and although he recovered quickly, he was in the emergency room often at a young age "because he was clumsy, had a lot of reflux, and had problems breathing" (Tr. 512). Plaintiff has been diagnosed with bipolar disorder and his mother also has been diagnosed with bipolar disorder (see id.).

Plaintiff had a history of "global developmental delays and learning disabilities," and at the age of five his teacher noted that he was experiencing difficulty following directions (Tr. 322, 511). His kindergarten teacher also expressed concern regarding plaintiff's peer relationships (Tr. 322). At this time, plaintiff's case manager indicated that plaintiff was "experiencing some difficulty relating to peers, fine motor delays and problem with attentional behavior" (Tr. 320). At eighteen, plaintiff indicated that he had been in special education since kindergarten (Tr. 512).

At the age of seventeen, plaintiff was evaluated by psychologist Dr. C. Kirk Johnson, Ph.D. ("Dr. Johnson") on March 7, 2005 (Tr. 606-16). Dr. Johnson conducted psychological testing (Tr. 611-14). He noted psychological problems in twenty-one distinct areas (Tr. 614). Dr. Johnson indicated that plaintiff had six areas of greatest concern, including inattention, in that plaintiff was not "able to focus in a sustained manner on a particular stimulus or activity" (id.).

Plaintiff was expelled from high school for possessing box cutters and subsequently attended an alternative high school (see Tr. 513). Plaintiff worked briefly in landscaping and also worked briefly for Little Caesar's Pizza (id.). Plaintiff did not have any substantial gainful activity (Tr. 13, 513).

## PROCEDURAL HISTORY

On August 21, 2006, plaintiff applied for Social Security Income benefits (Tr. 74-79). His application was denied initially and following reconsideration (Tr. 42-50). Plaintiff's requested hearing was held before Administrative Law Judge Richard A. Say ("the ALJ") on February 10, 2009 (Tr. 20-41). On March 24, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled under the Social Security Act (Tr. 8-19).

On November 17, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. In January, 2011, plaintiff filed a complaint seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 3). In his Opening Brief, plaintiff contends, among other things, that: (1) the ALJ failed to evaluate properly

the medical opinion of Dr. Roderick P. Calkins, Ph.D; and, (2) failed to evaluate properly the lay witness evidence (see ECF No. 13, pp. 4-5, 8-10).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S.

389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly the medical evidence provided by examining psychologist Dr. Roderick P. Calkins, Ph.D., ("Dr. Calkins")</u>.

The ALJ must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a

treating or examining psychologist's or physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set

forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

Dr. Calkins examined and evaluated plaintiff on November 11, 2006 (Tr. 511-22). He reviewed plaintiff's records, interviewed plaintiff and interviewed plaintiff's parents (Tr. 511). Dr. Calkins also conducted a complete mental status examination and evaluated psychological tests, such as the Wechsler Adult Intelligence Scale-III (WAIS-III), the Wechsler Memory Scale-III (WMS-III), the Wide Range Achievement Test-III (WRAT-III), and the Trail Making Test (id.). Dr. Calkins opined specifically that the information provided by plaintiff and his parents and the behavior Dr. Calkins observed were "consistent with information found in his records" (id.).

Dr. Calkins noted that although plaintiff reported that he was able to ride the bus without getting lost, his parents felt that he would not be able to manage the logistics of getting anywhere in a timely fashion consistently (Tr. 513). Subsequently in his report, Dr. Calkins assessed that plaintiff overall appeared "to have the opinion that he is functioning more independently than he is and that the problems he has experienced may be less serious than they indeed are" (Tr. 516). Dr. Calkins observed that plaintiff "appeared to have some difficulty responding to certain tasks, particularly those which required him to hold information in memory and act upon it" (id.). Dr. Calkins also observed that plaintiff "had no idea about what any of the three proverbs put to him might mean" (id.). Plaintiff reported knowing how to clean, do laundry and basic microwave cooking, although his parents reported that he seldom did these tasks (id.).

Following psychological testing, Dr. Calkins noted that plaintiff's test scores indicated that plaintiff's cognitive abilities ranged from the borderline to the average range, although plaintiff "had a very poor score on the Working Memory index and complained that he has difficulty remembering things that he must grasp quickly" (Tr. 518). Dr. Calkins also noted that plaintiff "had particular trouble with the Digit Span subtest which required him to listen to a group of numbers and repeat them" (id.). Dr. Calkins assessed that although plaintiff had fairly good perceptual reasoning skills and good visual/motor skills, his "verbal skills appeared to be weaker overall" (id.). Based on tests of plaintiff's reading skills, Dr. Calkins opined that plaintiff may need assistance filling out job applications (Tr. 518-19). Based on plaintiff's results on various memory tests, Dr. Calkins assessed that plaintiff's "visual memory skills show some significant deficits, particularly a short while after initial learning" (Tr. 519-20).

Dr. Calkins diagnosed plaintiff with Attention Deficit/Hyperactivity Disorder, combined; Adjustment Disorder with Depressed Mood; and Academic/Social/Independent Living/Vocational Problems (Tr. 520). Dr. Calkins also opined that there was a need to rule out the potential diagnoses of conduct disorder/antisocial personality features (id.). He assessed plaintiff's Global Assessment of Functioning at 45 at the time of the examination and 40 over the course of the past year (id.).

Dr. Calkins opined that most of plaintiff's skills "fell significantly below the average expected for individuals his age" (Tr. 521). Dr. Calkins also opined that plaintiff's difficulties "will make it difficult for him to acquire new skills or to attain

independent functioning as an adult" (id.). Dr. Calkins indicated that the overall pattern of test results was somewhat difficult to explain, as plaintiff had better visual/spatial than verbal cognitive abilities, yet plaintiff's auditory memory scores tended to be better than his visual memory scores (id.). Dr. Calkins noted that plaintiff clearly had some difficulty performing a number of the test tasks, and opined that "there were no indications from his behavior during this evaluation that any of those difficulties were feigned" (id.).

After noting plaintiff's incarceration for setting a fire at school and allowing a minor to drive his car, which resulted in a car accident, Dr. Calkins opined that such "behavioral disregulation may be explained in terms of Attention Deficit/Hyperactivity Disorder," although he also opined that plaintiff may have "a lack of understanding or disregard for social conventions and rules" (id.). Therefore, Dr. Calkins expressed the need to rule out potential conduct disorder and personality factors as contributors to such difficulties (id.). Regarding Bipolar Disorder, Dr. Calkins opined that "there was not sufficient information available during this evaluation to make such a diagnosis with certainty" (Tr. 521-22).

In making his residual functional capacity determination, the ALJ concluded that plaintiff could "understand, remember, and carry out short routine tasks and short, simple instructions" (Tr. 15). Regarding Dr. Calkins opinions, the ALJ included the following discussion:

> The undersigned gives little weight to the medical opinion of consultative examiner Roderick Calkins, PhD, who concluded that the claimant's impairments would likely make it difficult for him to acquire new skills or to attain independent functioning as an adult (internal citation to Ex. 4F at 11). Dr. Calkins reported that his test results were

> quite variable and that the overall pattern of result (sic) was difficult to explain. Further, the opinion is not consistent with the overall medical record.

(Tr. 17).

In contrast, the ALJ gave significant weight to non-examining psychologist Dr. Carla van Dam, Ph.D. ("Dr. van Dam") (see Tr. 16-17, 524-37, 538-41). However, in order to discount the opinions of an examining psychologist in favor of a non-examining consultant, "the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen, supra, 100 F.3d at 1466; Lester, supra, 81 F.3d at 831. Here, the ALJ failed to do so.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The mental status examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Id. at 4 (emphasis in original).

The mental status examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's

subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that his "condition reflects a potentially serious mental illness." Van Nguyen, supra, 100 F.3d at 1465.

Here, trained psychologist Dr. Calkins indicated specific opinions based on his examination of plaintiff and based on his evaluation of plaintiff's test results. When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctor, are correct. Reddick, supra, 157 F.3d at 725; see also Blankenship, supra, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting* Poulin v. Bowen, 817 F.2d 865, 873-74 (D.C. Cir. 1987)).

The ALJ noted opinions by Dr. Calkins regarding the variability of the test results and how the test results were difficult to explain (see Tr. 17). As these were Dr. Calkins' opinions, he obviously was aware of these factors. Nevertheless, Dr. Calkins indicated his specific assessments regarding plaintiff's functional abilities, including his assessment that plaintiff's difficulties "will make it difficult for him to acquire new skills or to attain independent functioning as an adult" (see Tr. 521). Here, the ALJ gave a different

interpretation of the results obtained by Dr. Calkins without adequate explanation or justification. See Reddick, supra, 157 F.3d at 725.

The ALJ also concluded that Dr. Calkins' "opinion is not consistent with the overall medical record" (see Tr. 17). However, the ALJ does not provide specific support for this conclusion in the context of giving "little weight" to Dr. Calkins' opinions (see Tr. 17). This is not a specific, legitimate reason supported by substantial evidence in the record to discount Dr. Calkins' opinion. See Van Nguyen, supra, 100 F.3d at 1466; Lester, supra, 81 F.3d at 831.

In addition, the vast majority of evidence from the medical record that the ALJ cited elsewhere in his written decision regarding plaintiff's abilities came from the opinion of Dr. Calkins (see Tr. 14, 16). For example, previously in the written decision, the ALJ indicated that plaintiff was "able to use the public bus independently," and cited Dr. Calkins' opinion (see Tr. 14 (*citing* Ex. 4F at 3, i.e., Tr. 513)). However, the ALJ failed to mention that plaintiff's parents questioned this alleged ability by plaintiff (Tr. 513) and also failed to mention Dr. Calkin's assessment that that plaintiff had "the opinion that he is functioning more independently than he is" (Tr. 516). The ALJ also indicated elsewhere in his opinion that plaintiff immediately returned Dr. Calkins' handshake, "sat for several hours without signs of discomfort, and answered questions readily," again citing Dr. Calkins' opinion (see Tr. 14 (*citing* Ex. 4F at 5, i.e., Tr. 515)). The ALJ cited plaintiff's "generally good perceptual reasoning and visual/motor skills," again citing Dr. Calkin's opinion (see Tr. 14 (*citing* Ex. 4F at 8, i.e., Tr. 518)). The ALJ also cited Dr. Calkin's opinion that plaintiff "completed the tests at an average rate with

good effort throughout" (see Tr. 16 (*citing* Ex. 4F at 5-6, i.e., Tr. 515-16)). Finally, the ALJ noted that plaintiff was cooperative and engaged and that he testified that he spent time on myspace.com and read magazines (see Tr. 14).

The evidence noted by the ALJ throughout his written decision demonstrates the extent to which he was providing his own interpretation of the observations by Dr. Calkins and the test results obtained by Dr. Calkins. However, an ALJ must explain why his interpretations are correct over those of an examining doctor. See Reddick, supra, 157 F.3d at 725. In addition, the evidence detailed by the ALJ does not demonstrate an inconsistency between the overall medical record and the opinion by Dr. Calkins. For this reason, the Court concludes that the ALJ's conclusion that Dr. Calkins' opinion "is not consistent with the overall medical record" is not a specific, legitimate reason supported by substantial evidence in the record to give "little weight" to the opinions of Dr. Calkins. See Van Nguyen, supra, 100 F.3d at 1466; Lester, supra, 81 F.3d at 831.

This Court must "review the ALJ's decision based on the reasoning and actual findings offered by the ALJ." See Bray, supra, 554 F.3d at 1226-27 (*citing* SEC v. Chenery Corp., 332 U.S. at 196. For this reason, the other reasons stated, and based on the relevant record, the Court concludes that the ALJ failed to provide specific, legitimate reasons for discounting the opinions of Dr. Calkins. See Van Nguyen, supra, 100 F.3d at 1466; Lester, supra, 81 F.3d at 831. Therefore, the Commissioner's denial of social security benefits should be set aside and this matter should be reversed and remanded to the Commissioner for further administrative proceedings. See id.t

2. <u>The Administrative Law Judge assigned to this matter following remand should assess anew the lay testimony</u>.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not

supported by medical evidence in the record." Bruce, 557 F.3d at 1116 (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases).

Ms. Susan H. Dixon ("Ms. Dixon"), plaintiff's mother, provided a lay statement regarding plaintiff's abilities and limitations (see Tr. 130-38). As opined by Dr. Calkins, Ms. Dixon also opined that plaintiff could not manage his money (Tr. 133). Similar to the concerns reported by plaintiff's teacher and case manager, Ms. Dixon opined that plaintiff was argumentative, did "not use socially acceptable behavior" and that his conditions affected his ability to concentrate, follow instructions and get along with others (Tr. 134; see also Tr. 320, 322). She also opined that plaintiff's conditions affected his memory and his ability to understand and complete tasks, limitations that also were indicated by his psychological testing results, as assessed by Dr. Calkins (Tr. 135; see also Tr. 516, 518, 520, 521).

In addition, Ms. Dixon indicated her opinion that plaintiff could only pay attention for a minute or two, did not complete tasks, did not follow written or spoken instructions well and did not get along well with authority figures (Tr. 135). She also indicated that plaintiff did not handle stress well and did not handle changes in routine well.

The ALJ indicated that the statements by Ms. Dixon largely reflected the allegations made by plaintiff (Tr. 17). The ALJ did not indicate specifically what weight was given to her statements, but concluded that "the limitations alleged by Ms. Dixon are not consistent with the objective medical record or the claimant's reported daily activities" (id.).

As indicated in the discussion of Ms. Dixon's statements, most of her opinions were similar to opinions of others in the record and were similar to plaintiff's results following psychological testing, as assessed by Dr. Calkins. In addition, plaintiff's daily activities mentioned by the ALJ in his written decision are the same daily activities reported by Ms. Dixon, such as that plaintiff was able to "ride his bicycle, cook, do laundry, attend to personal care, go shopping and do yard work" (see Tr. 14, 130, 132, 133, 134).

Although an ALJ does not necessarily need to link his determination regarding lay testimony to the reasons for discounting such testimony, the ALJ must at least note arguably germane reasons for dismissing lay testimony. See Lewis, supra, 236 F.3d at 512. Here, it is not clear what reported daily activities of plaintiff were not consistent with the testimony provided by Ms. Dixon, and, furthermore, Ms. Dixon's testimony appeared to be fully consistent with the objective medical record. For these reasons, the

Administrative Law Judge assigned to this matter following remand should assess anew the lay statement provided by plaintiff's mother, Ms. Dixon.

   3. <u>The Administrative Law Judge assigned to this matter following remand should assess all of the significant and probative evidence from the mental residual functional capacity assessment by Dr. van Dam.</u>

The ALJ gave significant weight to non-examining psychologist Dr. van Dam (<u>see</u> Tr. 16-17, 524-37, 538-41). However, the ALJ only mentioned that Dr. van Dam "concluded that the claimant had moderate limitations in daily activities; social functioning; and concentration, persistence, and pace; and that there was insufficient evidence regarding episodes of decompensation" (Tr. 16-17; <u>see also</u> Tr. 534). The ALJ failed to mention or discuss the fact that Dr. van Dam concluded that plaintiff was markedly limited in his ability to understand and remember detailed instructions and also was markedly limited in his ability to carry out detailed instructions (<u>see</u> Tr. 538). This level of limitation is the highest level of limitation at which a claimant can be rated (<u>see id</u>.). In addition, Dr. van Dam concluded that plaintiff suffered moderate limitations in areas other than the ones specified by the ALJ (<u>see</u> Tr. 538-39). Following remand, the mental residual functional capacity assessment by Dr. van Dam should be evaluated more thoroughly, especially if relied on and given significant weight.

   4. <u>This matter should not be remanded for an immediate award of benefits</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211

F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, supra, 80 F.3d at 1292. The record does not demonstrate conclusively that plaintiff was disabled. In addition, there is evidence in the record that was not considered fully by the ALJ, including evaluations from plaintiff's school (see Tr. 177-82, 184-322) and the evaluation from Dr. Johnson (see Tr. 614 (noting that plaintiff appeared to be having "some success in work")). Although these evaluations occurred before plaintiff's alleged onset date of disability, as plaintiff may have had these conditions for his entire life, they may be relevant (see Tr. 131 (according to Ms. Dixon, plaintiff's "disability has been lifelong")).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's residual functional capacity. See Sample, supra, 694 F.2d at 642. Remand also will allow the Commissioner the opportunity to consider explicitly the evaluations from plaintiff's school and the evaluation from Dr. Johnson. In addition, remand will allow for a more thorough assessment of the mental residual functional capacity assessment by Dr. van Dam.

## CONCLUSION

The ALJ failed to provide specific, legitimate reasons supported by substantial evidence in the record to discount the medical opinion evidence provided by Dr. Calkins. For this reason and based on the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on December 23, 2011, as noted in the caption.

Dated this 29th day of November, 2011.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge